## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ERIC PAUL MCNEIL**                                                **CIVIL ACTION**

**VERSUS**                                                          **NO. 21-81-BAJ-RLB**

**DOUG WELBORN, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 6, 2022.

                                                                               _____
                                                                               **RICHARD L. BOURGEOIS, JR.**
                                                                               **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ERIC PAUL MCNEIL                                                    CIVIL ACTION

VERSUS                                                              NO. 21-81-BAJ-RLB

DOUG WELBORN, ET AL.

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court are Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by defendants Doug Welborn ("Welborn") and Melissa Jones David ("David). (R. Doc. 7, 14). The motions are opposed. (R. Doc. 12, 20). Welborn filed a reply. (R. Doc. 15). For the following reasons, the Court recommends that the motions be granted, and the above-captioned action be dismissed.

**I.   Background**

On February 3, 2021, Eric Paul McNeil ("Plaintiff"), who is proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 against Welborn in his individual capacity and in his official capacity as Clerk of Court for the Parish of East Baton Rouge ("Clerk of Court")[1] and David in her individual capacity and in her official capacity as deputy clerk for the Clerk of Court and minute clerk for Division C of the Family Court for the Parish of East Baton Rouge (Welborn and David are hereinafter collectively referred to as "Defendants"). (R. Doc. 1 at 1-15). Plaintiff complains that Defendants violated his First and Fourteenth Amendment rights. He further asserts various state laws causes of action under Louisiana Civil Code Articles 2315, 2316, 2317, 2320, and 2324. (R. Doc. 1 at 1).

---

[1] The office of the Clerk of Court will hereinafter be referred to as the "Clerk's Office."

1

Plaintiff's Complaint is premised on alleged misconduct of Defendants during two legal proceedings in the 19th Judicial District Court: (1) *State v. McNeil* and (2) *Long v. McNeil*.

A.      *State v. McNeil*

*State v. McNeil* stems from a 2016 civil proceeding in which Plaintiff attempted to obtain a temporary restraining order ("TRO") from the Domestic Violence Department of the Clerk's Office. (R. Doc. 1 at 2). The Domestic Violence Department required Plaintiff to fill out a Data Collection Worksheet—which he contends is not the mandatory Louisiana Protective Order Registry ("LPOR") form—and execute a notary signed affidavit. (R. Doc. 1 at 9). After completing the paperwork and executing the affidavit, Plaintiff filed a handwritten petition with the Domestic Violence Department. (R. Doc. 1 at 2). He requested a stamped copy of the documents but was informed that a copy would not be ready until the following business day. (R. Doc. 1 at 2).

At the hearing on the TRO, Plaintiff realized that the petition before the court was not the same petition that he filed. (R. Doc. 1 at 3). Plaintiff alleges that the "deputy clerk had typed a new petition and had slipped in just the pages" of Plaintiff's original petition on which "a signature was present." (R. Doc. 1 at 3). According to Plaintiff, the new "petition contained unauthorized revisions," including inaccurate allegations of sexual assault. (R. Doc. 1 at 3). Plaintiff informed the presiding judge of the unauthorized revisions, and a permanent protective order was denied.[2] Plaintiff was later billed and arrested for perjury (*State v. McNeil*) because of the false information contained in the petition. (R. Doc. 1 at 4).

Plaintiff filed a *pro se* request for a subpoena duces tecum with the Clerk's Office in efforts to obtain documents to defend the perjury charges. (R. Doc. 1 at 4). After months of no

---

[2] Plaintiff later filed a motion to strike the petition, which was granted on February 3, 2020. (R. Doc. 1 at 5).

2

response, Plaintiff inquired into the status of the subpoena. Plaintiff learned that before the Clerk of Court can issue a subpoena, the requests must first go to the judge's law clerk who then decides where to send it. (R. Doc. 1 at 4). Plaintiff alleges that because of this process, his subpoena request was never filed, and Welborn obstructed his access to the records needed to defend the allegations of perjury. (R. Doc. 1 at 5). According to Plaintiff, Welborn's obstruction of access to the records caused him to serve a 90-day sentence. (R. Doc. 1 at 5).

### B. *Long v. McNeil*

In the second legal proceeding, Plaintiff's mother-in-law, Marian Long ("Long"),[3] who has legal custody of his child, filed a request for a TRO against Plaintiff. (R. Doc. 1 at 5). Plaintiff alleges that the court conducted two hearings on the TRO, but Long failed to appear at both. According to Plaintiff, Long's failure to appear was grounds for involuntary dismissal of the action, but David "made misrepresentations of truth" in the court's minute entries "to conceal the fact that" Long "did not appear." (R. Doc. 1 at 7). Particularly, Plaintiff alleges that David misrepresented that Attorney Michael Aaron appeared on Long's behalf at a hearing on February 12, 2020 and the IRIS family violence intervention center appeared on Long's behalf at a July 1, 2020 hearing.[4] (R. Doc. 1 at 7). Plaintiff asserts that this information is false because neither Long, Attorney Michael Aaron, nor any IRIS representative appeared at either hearing. (R. Doc. 1 at 7). Plaintiff requested transcripts of the TRO hearings to prove David's misrepresentations, but David allegedly refused to provide the requested transcripts. (R. Doc. 1 at 8).

---

[3] David explains that "[t]hrough review of the docket and records of the 19th Judicial District Court, and through comparative reference to Plaintiff's pleadings, it is believed that the specific case referenced by Plaintiff is *Marian Lynette Long v. Erica Paul McNeil*, F-220558, State of Louisiana, 19th Judicial District Court, Parish of East Baton Rouge, Division C." (R. Doc. 14-1 at 1). Accordingly, Plaintiff's mother-in-law is hereinafter referred to as "Long."
[4] The February 12, 2020 and July 1, 2020 hearings are hereinafter referred to as the "TRO hearings."

3

Considering Long's alleged failure to appear, Plaintiff filed a motion for involuntary dismissal. According to Plaintiff, the motion was never ruled on or set for contradictory hearing because Welborn concealed the order page of the motion. (R. Doc. 1 at 7).

In sum, Plaintiff alleges that Welborn (1) conducted an unauthorized practice of law with respect to the Clerk's Office's process of filing TROs, (2) withheld his request for subpoena duces tecum, and (3) concealed the order page of his motion for involuntary dismissal. (R. Doc. 1 at 10). Plaintiff further alleges that David (1) made misrepresentations of truth in the minute entries of the TRO hearings and (2) refused to provide the transcripts of same. (R. Doc. 1 at 7-8). According to Plaintiff, Welborn and David's conduct constitutes violations of his First Amendment right to access of the courts and Fourteenth Amendment rights to procedural and substantive due process, as well as equal protection of the law.

## II.   Arguments of the Parties

### A.   Welborn's Arguments in Support of His Motion to Dismiss

In support of his motion to dismiss, Welborn asserts that Plaintiff's official capacity claims under 42 U.S.C. § 1983 fail because Plaintiff cannot establish that any violation was caused by a policy or custom of the municipality. (R. Doc. 7-1 at 4). Welborn further argues that Plaintiff's First Amendment claim is premised on his inability to "effectively defend himself," which is not protected by the constitutionally guaranteed right to access the courts. (R. Doc. 7-1 at 5). He also asserts absolute immunity against Plaintiff's allegations that he withheld Plaintiff's subpoena duces tecum request. (R. Doc. 7-1 at 6). Welborn contends that he was performing an act that he is specifically required to do under court order or at a judge's discretion. (R. Doc. 7-1 at 6).

Welborn further contends that, similar to an earlier case filed by the plaintiff in this Court against a different Clerk of Court, the *Parratt/Hudson* doctrine applies to Plaintiff's procedural due process claims. (R. Doc. 7-1 at 9). First, Welborn argues that (1) failing to issue a subpoena duces tecum and (2) removing the order page from Plaintiff's motion for involuntary dismissal are random and unauthorized acts. (R. Doc. 7-1 at 9). Second, there were post-deprivation remedies available to Plaintiff. (R. Doc. 7-1 at 9).

Next, Plaintiff's equal protection claim fails because (1) he has not alleged to be part of a protected class and (2) he fails to identify a fundamental right that was implicated by Welborn's actions. Therefore, the Court need only apply a rational-basis review of Welborn's action, which carries a "strong presumption of constitutional validity." (R. Doc. 7-1 at 11).

**B.    David's Arguments in Support of Her Motion to Dismiss**

David argues that Plaintiff's claims against her in her official capacity as the minute clerk for Division C of the Family Court for the Parish of East Baton Rouge ("minute clerk") fail because she is an agent of the State, and the State is not a person under § 1983. (R. Doc. 14-1 at 2).

Additionally, David contends that Plaintiff's claim for denial of the right to access to the courts fails because Plaintiff does not allege that he was barred or delayed from instituting suit. (R. Doc. 14-1 at 3). Rather, Plaintiff argues that he was stonewalled in gathering evidence for his defense of a suit that was already instituted by another person. (R. Doc. 14-1 at 3).

With respect to Plaintiff's due process claims, David argues that she was incapable of violating Plaintiff's due process rights because the "power to maintain a suit or action in a court, to continue hearings, or to modify and extend" a TRO "lies with the presiding judge" and not the

5

minute clerk. (R. Doc. 14-1 at 4). Accordingly, David's misrepresentations of Long's appearance at the TRO hearings could not have caused *Long v. McNeil* to remain active. (R. Doc. 14-1 at 4).

Finally, David asserts that Plaintiff's equal protection claim fails because Plaintiff makes no allegation that he was intentionally treated differently from other similarly situated individuals or that any different treatment lacked a rational basis as required to state an equal protection claim. (R. Doc. 14-1 at 5).

### III. Law and Analysis

#### A. Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court may consider the Complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir. 2011). The Court may also consider documents that a defendant attaches to its motion that are referred to in the complaint and are central to the plaintiff's claims. *Causey v. Sewell Cadillac-Chevrolet, Ind.,* 394 F.3d 285, 288 (5th Cir. 2004); *In re Katrina Canal Breaches Litig.,* 495 F.3d at 205.

The documents considered must show that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

6

that the defendant is liable for the misconduct alleged." *Aschcroft v. Iqbal,* 556 U.S. 662 (2009). When determining plausibility, the Court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly,* 550 U.S. at 557. Factual assertions are presumed to be true, but mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Because a 12(b)(6) motion to dismiss challenges the sufficiency of the complaint, "it is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." *Pullins v. Hancock Whitney Bank*, 512 F. Supp. 3d 647, 654 (M.D. La. 2021). Accordingly, the Court will not consider new factual allegations that are not implicitly or explicitly contained in Plaintiff's Complaint.

Further, "[a] document filed *pro se* is to be liberally construed… and a *pro se* Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (internal quotation marks and citations omitted). Notwithstanding, the Court need not accept "a legal conclusion couched as a factual allegation," *Papasan v. Allain,* 478 U.S. 265, 286 (1986), or "naked assertions [of unlawful conduct] devoid of further factual enhancement." *Iqbal,* 556 U.S. at 678.

    **A.    Discussion**

        **1.    Official Capacity Claims Against Welborn as Clerk of Court**

A suit against a government official in his official capacity is the equivalent of filing suit against the government agency of which the official is an agent. *Burge v. Parish of St. Tammany,* 187 F.3d 452, 466 (5th Cir. 1999). Municipalities may not be held liable for the actions of their employees. However, a municipality may be held liable if its execution of policies or customs inflicts the injury. *Hudspeth v. City of Shreveport*, 2006 WL 37474466, at *19 (W.D. La. Dec.

7

18, 2006) (citing *Monell v. Dep't of Social Services of New York*, 436 U.S. 658, 694 (1978)). Therefore, to determine whether Plaintiff has stated such a claim, the Court must conduct a municipal liability analysis under *Monell v. Dep't of Social Services of the City of New York,* 436 U.S. 658 (1978).

To assert a claim of municipal liability under Section 1983, a plaintiff must adduce sufficient factual matter to satisfy three elements: (1) the existence of an official policy or custom; (2) a policymaker with final policymaking authority; and (3) a violation of constitutional rights whose "moving force" is the policy of custom. *Davis v. Tarrant County, Tex.,* 556 F.3d 214, 227 (5th Cir. 2009).

Welborn argues that each of the policies or customs asserted by Plaintiffs are alleged "deviations from, or violations of," the statutory duties of the Clerk of Court. (R. Doc. 7-1 at 4). Accordingly, the actions which Plaintiff contends constitutes policies or customs are not endorsed by the municipality. (R. Doc. 7-1 at 4). Welborn essentially suggests that Plaintiff's official capacity claims fail because he has not established a policy or custom that falls within the first type of policy. The Court agrees.

Construing Plaintiff's Complaint liberally, however, Plaintiff also alleges that the acts of the Clerk's Office represent a persistent and widespread practice that, although not officially adopted and promulgated as policy, is so common and well settled as to constitute municipal policy.

Plaintiff, nevertheless, fails to adduce or allege sufficient factual matter to show that the misconduct constitutes a common and persistent practice. "A customary policy consists of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow*

*v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir.2010). "Sufficiently numerous prior incidents of" misconduct "may tend to prove a custom and accession to that custom by the municipality's policymakers. Isolated instances, on the other hand, are inadequate to prove knowledge and acquiescence by policymakers." *McConney, v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989).

Here, the Complaint contains only two instances in which the Clerk's Office performed the alleged misconduct—namely, when Plaintiff and Long filed their respective TROs. (R. Doc. 1 at 2-3, 6). In addition, the allegations as to each are not the same. These two isolated incidents are not sufficient to show a pattern of constitutional conduct. *See Prince v. Curry,* 423 F. App'x 447, 451 (5th Cir. 2011) ("The existence of only one or, at most, two other similarly situated defendants does not suggest that Tarrant County has a policy or custom of unconstitutionally subjecting sex offenders to enhanced sentences…"). Accordingly, Plaintiff fails to show the existence of a municipal policy or custom, and the claims against Welborn in his official capacity should be dismissed for failure to state a claim for municipal liability under Section 1983.

These claims also fail for a failure to adduce sufficient facts to demonstrate a violation of constitutional rights whose "moving force" is the policy of custom.

### 2.   Official Capacity Claims Against David as Minute Clerk

David argues that Plaintiff cannot maintain a claim against her in her official capacity as minute clerk because she is an official of the state, which is not a person under Section 1983. (R. Doc. 14-1 at 2).

David is correct that neither the state nor its officials acting in their official capacities are considered "persons" within the meaning of Section 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989). This is chiefly because the Eleventh Amendment bars suit in federal court against the state and agencies acting under its control. *Cox v. Texas,* 354 Fed. App'x 901,

9

902 (5th Cir. 2009); *Will,* 491 U.S. at 63 (explaining that Section 1983 provides a federal forum to remedy deprivations of civil liberties, but "the Eleventh Amendment bars such suit unless the State has waived its immunity"). Likewise, state officers sued in their official capacity are not "persons" because they assume the identity of the government that employs them. *Hafer v. Melo,* 502 U.S. 21, 27 (1991).

For the following reasons, the Court finds that Plaintiff's suit against David in her official capacity as minute clerk is essentially a suit against the state, and therefore, David is not a "person" under Section 1983.

David is the minute clerk for the East Baton Rouge Family Court, which Louisiana law perceives as an arm of the state. Under Louisiana law, "'[i]f the office is created by the legislature, or is established in the first instance by the constitution, it is a state office.'" *Mullins v. State,* 387 So. 2d 1151, 1152 (La. 1980) (quoting *State v. Taylor,* 11 So. 132 (La. 1892)). Family courts are regarded by Louisiana's constitution as part of the state's judicial branch, *see* La. Const. Art. 5 §§ 5, 18, and the East Baton Rouge Family Court was specifically established by the legislature under La. R.S. 13:1401.

Second, the Fifth Circuit has explained that "the most significant factor in assessing an entity's status is whether a judgment against it will be paid with state funds." *Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*, No. 20-20503, 2021 WL 4096928, at *5 (5th Cir. Sept. 8, 2021). Under La. R.S. 13:5108.1, any final judgment against an official, officer, or employee of a family court will be paid by the state. Minute clerks are considered, under Louisiana jurisprudence, as "lower court official[s]." *Johnson v. Foti,* 583 So. 2d 1210, 1212 (La. App. 4 Cir. 1991). Accordingly, a judgment against David in her official capacity as minute clerk will be satisfied out of the state treasury.

For these reasons, David, as minute clerk, is not a "person" capable of being sued under Section 1983, and Plaintiff's claims against David this capacity should be dismissed.[5]

### 3. Denial of Access to the Courts Claims

Plaintiff alleges that Welborn violated his right to access the courts by (1) withholding his request for subpoena duces tecum and (2) removing the order page of his motion for involuntary dismissal. (R. Doc. 1 at 10). He further alleges that David violated his right to access the courts by misrepresenting Long's appearance at the TRO hearings and failing to provide the transcripts of same. (R. Doc. 1 at 7-8).

"[T]he right of access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances." *Bill Johnson's Rests., Inc. v. N.L.R.N.,* 461 U.S 731, 741 (1983). To prevail on a claim of denial of the right to access the courts, a plaintiff must demonstrate an actual injury stemming from the defendant's unconstitutional conduct. *Lewis v. Casey,* 518 U.S. 343, 351-54 (1996). To establish actual injury the plaintiff must show that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury,* 536 U.S. 403, 415 (2002).

In *Lewis v. Casey,* the United States Supreme Court delineated the parameters of the right to access the courts:

> It must be acknowledged that several states in *Bounds*[6] went beyond the right of access recognized in the earlier cases on which it relied, which was a right to bring to court a grievance that the inmate wished to present. These statements appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court. These elaborations upon the right of access to the courts have no antecedent in our pre-*Bound* cases, and we now disclaim them.

---

[5] Although the Complaint also identifies David as a deputy clerk for the Clerk of Court, the allegations against David are solely directed to her actions as minute clerk. Accordingly, there is no need to address claims against her outside of the above analysis.

[6] *Bounds v. Smith,* 430 U.S. 817 (1977).

11

*Lewis,* 518 U.S. at 354. (emphasis in original). Accordingly, the right to access the court does not encompass the right to litigate effectively once in court, nor does it protect the right to proceed free of discovery abuses after suit has been filed. *Cardona v. Davis,* 770 Fed. Appx. 179, 183 (5th Cir. 2019); *Foster v. City of Lake Jackson,* 28 F.3d 425, 431 (5th Cir. 1994).

As Defendants point out, Plaintiff's allegations are premised on his ability to defend suits that were already initiated. By Plaintiff's own admission, the request for subpoena duces tecum was filed as he was "preparing his defense" to the charges of perjury. (R. Doc. 1 at 4). Moreover, Plaintiff's motion for involuntary dismissal and requests for transcripts were made as he was defending Long's TRO against him.

Plaintiff, nevertheless, argues that Defendants action in concealing transcripts, withholding his subpoena duces tecum, and removing the order page of his motion for involuntary dismissal deprived him of "adequate, effective, and meaningful" access to the courts. (R. Doc. 1 at 10). This conduct, however, is precisely the type that the Supreme Court and the Fifth Circuit declines to expand to a constitutional violation of the right to access the courts.[7] Accordingly, Plaintiff's allegations fall short of stating a claim for denial of the right to access the courts.

### 4.   Fourteenth Amendment Due Process Claims

As an additional theory of recovery, Plaintiff contends that Defendants' actions infringed upon his right to procedural and substantive due process, as well as equal protection under the law.

A procedural due process violation results from "a denial of procedural fairness," while a substantive due process violation arises from the arbitrary exercise of government power. *County*

---

[7] Taken to its conclusion, to find otherwise could make state discovery disputes into federal lawsuits.

*of Sacramento v. Lewis,* 523 US. 822, 846 (1998). The touchstone of each due process claim is the deprivation of a life, liberty, or property interest. *Mikeska v. City of Galveston,* 451 F.3d 376, 39 (5th Cir. 2006) (a plaintiff bringing a substantive due process claim "must allege a deprivation of a constitutionally protected right."); *Matthews v. Eldridge,* 424 U.S. 319, 332 (1976) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."). Absent a deprivation of such interest, Plaintiff's procedural and substantive due process claims fail.

Plaintiff's due process claims are based on the deprivation of a liberty interest—the right to access the courts. Plaintiff, however, fails to state a claim for denial of the right to access the courts. As a result, Plaintiff's due process claims also fail.

Even if Plaintiff's right to access the courts claim prevailed or if his claims could be read to assert a loss of his liberty due to the criminal sentence he received, he still has not pled a valid substantive due process claim. The substantive component of the due process clause is violated by governmental action only when it can be properly characterized as arbitrary or conscience shocking in the constitutional sense. *Reyes v. North Texas Tollway Authority, (NTTA),* 861 F.3d 558, 562 (5th Cir. 2017). The burden to show conscience shocking behavior "is extremely high," requiring evidence of conduct so brutal, egregious, or outrageous that it "violates of the decencies of civilized conduct." *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys,* 675 F.3d 849, 867 (5th Cir. 2012).

The Court finds that Defendants' actions in refusing to produce transcripts, withholding subpoena duces tecum requests, and concealing any order page burden does not "violate the decencies of civilized conduct."

In *McNeil*, this same plaintiff brought claims against the Clerk of Court in Walker, Louisiana, alleging that she "failed to issue subpoenas, properly file evidence, and accurately record" who was present at a court hearing, resulting in a criminal finding against him. Nearly identical allegations are brought in this case against Welbourne. The district judge noted that these allegations fail to survive the pleading stage as they "exemplify the 'random and unauthorized' deprivations which *Parratt / Hudson* was meant to address."[8] 2019 WL 1435831 at *4.

Moreover, as in *McNeil*, Louisiana provides adequate post-deprivation remedies to Plaintiff. Plaintiff was entitled to appeal any adverse judgment against him. *Id.* at *5 (dismissing claim against the Clerk of Court and noting that Plaintiff alleged no procedural defect in Louisiana's appeal procedure).

Finally, Plaintiff conclusively asserts that Defendants' actions have resulted in a denial of his right to equal protection under the law. To successfully plead an equal protection claim, the plaintiff must show that the defendant "intentionally discriminated against [him] because of membership in a protected class." *Williams v. Bramer,* 180 F.3d 699, 705 (5th Cir. 1999). He may also allege a "class-of-one" equal protection claim by showing that "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook,* 528 U.S. 562, 564 (2000).

Plaintiff's Complaint is completely bereft of any allegations indicating that he is a member of a protected class or that Defendants discriminated against him because of his membership. It also lacks facts showing that he is "similarly situated" to others that were treated

---

[8] The doctrine is derived from two Supreme Court cases that limited the scope of § 1983 claims*: Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984).

14

differently. Because Plaintiff fails to plead facts supporting a Section 1983 claim for violation of equal protection under the law, his claim should be dismissed.

### 5. State Law Claims

The Court need not resolve or address Plaintiff's state law claims. A district court may decline the exercise of supplemental jurisdiction over state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons. 28 U.S.C. § 1367(c). Having dismissed Plaintiffs' federal law claims, it is appropriate for the court to decline the exercise of supplemental jurisdiction over Plaintiffs' state law claims.

## III.  Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Welborn's Motion to Dismiss (R. Doc. 7) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that David's Motion to Dismiss (R. Doc. 14) be **GRANTED**.

**IT IS FUTHER RECOMMENDED** that, to the extent they are asserted, the Court decline to exercise jurisdiction over any state law claims.

Signed in Baton Rouge, Louisiana, on January 6, 2022.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**